J-S18043-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
v.   :
  :
  :
JEFFREY LYNN SIMPSON JR.   :
  :
Appellant   :   No. 1430 MDA 2021

Appeal from the Judgment of Sentence Entered September 20, 2021
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0001457-2020

BEFORE: BENDER, P.J.E., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:      **FILED: DECEMBER 22, 2022**

Jeffrey Lynn Simpson Jr. (Appellant) appeals from the judgment of sentence entered in the Dauphin County Court of Common Pleas after pleading guilty to one count each of simple assault and endangering the welfare of a child (EWOC).[1] Appellant challenges: (1) the denial of his post-sentence motion to withdraw his guilty plea, alleging the trial court did not conduct a sufficient on the record colloquy; and (2) the discretionary aspects of his sentence. For the reasons below, we affirm.

The Commonwealth alleged the following facts at the September 20, 2021, plea hearing:

> [On] February 8[, 2020, Appellant] and his then girlfriend,
> [Victim], were at their apartment in Swatara Township in Dauphin

---

[1] 18 Pa.C.S. §§ 2701(a)(1), 4304(a)(1).

County[. T]hey were in their room and their [two year old[2]] daughter was not staying in the bed. [Appellant] got upset and [he and Victim] began to argue. He then pushed [Victim] into the closet and started punching her in the face and head, mostly in her head.

The daughter was close by at the time screaming and crying and [Appellant] told her to shut the fuck up. [Victim] got away from [Appellant] and went with her daughter into the kitchen to get her some juice. [Appellant] then came in and started arguing again and pushed [Victim] so hard that she flew onto the table and fell off, falling into the rack that holds the pans which broke apart.

[Appellant] then got on top of her and squeezed her neck. He squeezed her lips . . . until her teeth cut into them and then went over to the daughter and made some sort of movement with [his] hands. The daughter then fell down.

[Victim] began cleaning up the kitchen and [Appellant] appeared to start getting mad again. He came back into the kitchen and pushed [Victim] into the wall and choked her and then made it difficult for her to leave for the rest of the weekend. There were photographs of her injuries. [Victim] was pregnant with their [second] child at the time of this incident.

N.T. Guilty Plea & Sentencing, 9/20/21, at 3-4.

On February 21, 2020, Appellant was charged with, *inter alia*, simple assault and EWOC, and on September 20, 2021, Appellant pleaded no contest to those charges. Timothy Barrouk, Esquire, represented Appellant at the plea hearing and in the present appeal. With respect to the plea colloquy, the following exchange occurred:

[Commonwealth]: I believe that they have gone through a guilty plea colloquy. Is that right, [Appellant's Counsel]?

---

[2] Affidavit of Probable Cause, 2/21/20, at 2.

[Appellant's Counsel]: We have and I e-mailed a copy to the [trial c]ourt.

[Commonwealth]: Do you have any questions about any of the rights that you're giving up as a result of your plea today, [Appellant]?

[Appellant]: No.

*        *        *

[Trial court: Appellant], do you understand, sir, that when you plead no contest you are conceding, you are agreeing that if this case went to trial the Commonwealth would have sufficient evidence to prove your guilt beyond a reasonable doubt?  Do you understand that?

[Appellant]: Yes, sir.

[Trial court]: Do you also understand that when you plead no contest it still goes on your record as a conviction?  Do you understand that?

[Appellant]: Yes, sir.

[Trial court]: And do you understand that for sentencing purposes I must treat this the same as I would either a guilty plea or a conviction by a jury, for example?  Do you understand that?

[Appellant]: Yes, sir.

[Trial court]: Also, you already have a prior record score of 5 and this conviction, even though you're pleading no contest, would add to that score.  So if there was any trouble down the road, your prior record score would be even higher.  Do you understand that?

[Appellant]: Yes, sir.

[Trial court]: Okay.  Since you understand all of that, I will accept the no contest plea.

N.T. 9/20/21, at 2-6.  Appellant's written colloquy was not included in the certified record.

That same day, the trial court proceeded to sentencing. It does not appear a pre-sentence investigation (PSI) report was prepared. Appellant stated the standard range for EWOC was 12 to 18 months' incarceration and the court recognized he had a prior record score of five.[3] N.T. 9/20/21, at 5. However, the certified record does not state the standard range for his simple assault conviction or the aggravated ranges for either of Appellant's convictions.

During the hearing, the Commonwealth requested: (1) the maximum sentence on each count; (2) consecutive sentences on each count; (3) a no contact order with Victim and the "children;"[4] and (4) mental health treatment and parenting classes. N.T. 9/20/21, at 6-7. The Commonwealth argued:

> This is not [Appellant's] first domestic. It's not even his first domestic with [Victim].
>
> At the time of this incident she was pregnant and there was a young baby close by during the entire incident[.]
>
> [Appellant] has continued to harass and say nasty, horrible things to [Victim] up until . . . the present. He will not stop contacting [Victim] saying awful, terrible things[.]
>
> I don't believe [Appellant] has in any way taken responsibility for what he did to [Victim] now or in the past[.]

---

[3] The Commonwealth did not object to these assertions.

[4] Victim has three children, two of whom are also Appellant's children. N.T. Suppression H'rg, 11/23/20, at 5-6. Victim's second child with Appellant was born before the plea and sentencing hearing. No further information was provided.

- 4 -

*Id.* at 6.

Appellant's counsel requested a standard range sentence on his EWOC conviction and for his sentence on simple assault to run concurrently. N.T. 9/20/21, at 5-6. During the hearing Appellant expressed: (1) he did not know Victim was pregnant at the time of the attack; (2) he loved his daughter; (3) he provided support for his daughter both before and during his incarceration; and (4) Victim has initiated contact with him by sending pictures, making plans with Appellant after his release, and "putting money on [his] books[.]" *Id.* at 7.

The trial court sentenced Appellant to the statutory maximum of 12 to 24 months' incarceration on his conviction for simple assault, and a consecutive statutory maximum term of 30 to 60 months' incarceration on his conviction for EWOC. Both sentences are above the aggravated range.[5] In fashioning Appellant's sentence, the trial court stated it was "concerned" about his violent nature towards women generally and Victim specifically, and found "the level of violence here is extremely high and concerning." N.T. 9/20/21, at 7. The court also "incorporated" the Commonwealth's comments and Appellant's prior record score into its reasons for departing from the sentencing guidelines. *Id.* at 7-8. Finally, the court imposed a no contact order against Appellant for Victim and the children.

---

[5] *See* Trial Ct. Op. at 3; Appellant's Brief at 17. The Commonwealth does not contest this assertion.

Appellant filed a post-sentence motion arguing his sentence was manifestly unreasonable and the trial court did not properly consider surrounding factors before deviating from the guidelines. Appellant's Post-Sentence Motion to Modify Sentence and/or Withdraw Plea, 9/30/21, at 2-5. The trial court denied this motion on October 4, 2021. This timely appeal followed.[6]

Appellant raises the following claims:

1. Whether [the trial court] erred in denying [Appellant's] Post-Sentence motion, and more specifically, the ability to withdraw his plea?

2. Whether [the trial court] abused the discretionary aspect[s] of sentencing by sentencing [Appellant] to the statutory maximum on both counts consecutive to each other, a sentence above the aggravated ranges?

Appellant's Brief at 5.[7]

In his first claim, Appellant argues he did not enter his plea knowingly where the trial court did not inform him of the maximum penalties it could impose, and thus, he should be allowed to withdraw his plea. Appellant's Brief at 29, 34.

We first note when reviewing the denial of a motion to withdraw a plea, the decision to grant such a motion is within the discretion of the trial court.

_____

[6] Appellant complied with the trial court's order to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b).

[7] Appellant's claims have been reordered for ease of review.

*Commonwealth v. Kehr*, 180 A.3d 754, 757 (Pa. Super. 2018).  This Court

has stated:

> [P]ost-sentence motions for withdrawal are subject to higher
> scrutiny [than pre-sentence motions] since courts strive to
> discourage entry of guilty pleas as sentence-testing devices.  A
> defendant must demonstrate that manifest injustice would result
> if the court were to deny his post-sentence motion to withdraw a
> guilty plea.  Manifest injustice may be established if the plea was
> not tendered knowingly, intelligently, and voluntarily.   In
> determining whether a plea is valid, the court must examine the
> totality of circumstances surrounding the plea.  A deficient plea
> does not *per se* establish prejudice on the order of manifest
> injustice.

*Id.* at 756-57 (citations omitted).

The comment to Pennsylvania Rule of Criminal Procedure 590 provides

that before accepting a guilty plea, the trial court must ensure the defendant

understands:

> (1) the nature of the charges to which he is pleading guilty; (2)
> the factual basis for the plea; (3) he is giving up his right to trial
> by jury; (4) and the presumption of innocence; (5) he is aware of
> the permissible ranges of sentences and fines possible; and (6)
> the court is not bound by the terms of the agreement unless the
> court accepts the plea.

*Commonwealth v. Kpou*, 153 A.3d 1020, 1023 (Pa. Super. 2016) (citation

omitted).

Appellant acknowledges he reviewed his written plea colloquy with his

counsel before the plea hearing.  Appellant's Brief at 29.  Nevertheless, he

avers "the trial court did not conduct a sufficient on-the-record colloquy[,]"

nor did any party admit his written colloquy into the record, thus creating a

"fatal" procedural defect in his plea. *Id.* at 29, 31. He contends the trial court did not inform him of his rights as required by Pa.R.Crim.P. 590 when it only inquired about subsections one through three, but failed to question him regarding: (1) the presumption of innocence; (2) the range of sentences and fines possible; (3) and the fact that the court is not bound by the terms the Commonwealth offered in the plea agreement.[8] *Id.* at 32-33. Appellant admitted, however, "[p]rior to sentencing, all proper procedures were timely followed by [his counsel] regarding [Appellant's] guilty plea colloquy." *Id.* at 30 & n.4 (stating Appellant completed a guilty plea colloquy and emailed it to the court).[9] We reiterate that Appellant's plea counsel continues to represent him on appeal.

The trial court concluded the record does not suggest he entered his plea unknowingly or unintelligently. Trial Ct. Op. 12/22/21, at 3. It stated, "Appellant was thoroughly notified of the consequences of his no contest plea" and when asked if he understood, he responded affirmatively. *Id.* at 3-4; *see also* N.T. 9/20/21, at 3. We agree.

We acknowledge that Appellant's written plea colloquy was not entered into the record and the trial court's oral colloquy did not specifically inquire all the information set forth in the comment to Rule 590. However, to withdraw

---

[8] In reference to the last Rule 590 factor — that the court must inform a defendant it is not bound by the Commonwealth's plea offer — Appellant concedes he entered an open plea. Appellant's Brief at 33.

[9] It thus appears that Appellant's counsel has in their possession a copy of the plea colloquy.

a guilty plea after sentencing, one must demonstrate manifest injustice, which Appellant failed to do. *See Kehr*, 180 A.3d at 756-57. The record before us demonstrates, and importantly, Appellant agrees, that "[p]rior to sentencing, all proper procedures were timely followed by [his counsel] regarding [the] guilty plea colloquy." *See* Appellant's Brief at 30. Specifically, at sentencing, Appellant expressed he did not have questions about any of the rights he was waiving by entering the plea. N.T. 9/20/21, at 3-4. Further, when the trial court explained in detail that a plea of no contest was substantially similar to a plea of guilty, Appellant confirmed he understood the implications of pleading. *Id.* at 4-5.

The totality of the circumstances surrounding Appellant's plea demonstrates that he entered it knowingly and intelligently. Appellant cannot now retract the statements he made during his plea hearing and claim he did not understand its implications. *See Commonwealth v. Jabbie*, 200 A.3d 500, 505 (Pa. Super. 2018) (defendant is bound by his statements at the plea hearing and cannot recant them to withdraw his plea). As Appellant has failed to show the trial court abused its discretion or that he experienced a manifest injustice, no relief is due. *See Kehr*, 180 A.3d at 757.

In his second claim, Appellant argues the trial court erred when it sentenced him to the statutory maximum for both of his convictions and ran them consecutively. Appellant's Brief at 17. Further, he avers the trial court did not cite sufficient aggravating factors when it imposed a sentence above the aggravated range for his EWOC conviction. *Id.* Appellant contends his

sentence "was inappropriate based on the factors outlined in" 42 Pa.C.S. § 9781(d)(1)-(4) for several reasons. Appellant's Brief at 17, 20.

As Appellant presents a challenge to the discretionary aspects of his sentence, we note:

> An appeal raising the discretionary aspects of sentencing is not guaranteed as of right; rather, it is considered a petition for permission to appeal. In order to reach the merits of a discretionary aspects claim, we must engage in a four-part analysis to determine:
>
>> (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.
>
> *       *       *
>
>> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

**See Commonwealth v. Mulkin**, 228 A.3d 913, 916 (Pa. Super. 2020) (some citations omitted).

Here, Appellant filed a timely notice of appeal, raised his claims in his post-sentence motion or at his sentencing hearing, and included in his brief a Pa.R.A.P. 2119(f) statement. Further, his claim, that the trial court imposed an aggravated range sentence without stating adequate reasons on the

- 10 -

record, raises a substantial question. *See Commonwealth v. Mrozik*, 213 A.3d 273, 275-76 (Pa. Super. 2019) (citation omitted). Thus, we address his argument on its merits. *See Mulkin*, 228 A.3d at 916.

We consider the relevant standard of review:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Clemat*, 218 A.3d 944, 959 (Pa. Super. 2019) (citation omitted). Further, "when imposing sentence, the trial court is granted broad discretion, as it is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." *Mulkin*, 228 A.3d at 917.

Section 9781 of the Sentencing Code states the following:

> **(d) Review of record.** — In reviewing the record the appellate court shall have regard for:
>
> > **(1)** The nature and circumstances of the offense and the history and characteristics of the defendant.
> >
> > **(2)** The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
> >
> > **(3)** The findings upon which the sentence was based.
> >
> > **(4)** The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d)(1)-(4).

This Court has stated:

[W]hen imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S.A. § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on the victim and community, and rehabilitative needs of the defendant. . . .

Furthermore, [a] trial court judge has wide discretion in sentencing and can, on the appropriate record and for the appropriate reasons, consider any legal factor in imposing a sentence[.] The sentencing court, however, must also consider the sentencing guidelines.

*Clemat*, 218 A.3d at 960 (citation omitted & paragraph break added).

With respect to aggravated-range sentences, this Court has explained:

Generally, "[i]t is impermissible for a court to consider factors already included within the sentencing guidelines as the sole reason for increasing or decreasing a sentence to the aggravated or mitigated range." **However, "[t]rial courts are permitted to use factors already included in the guidelines if they are used to supplement other extraneous sentencing information."**

When deciding whether a court improperly has based an aggravated sentence on a factor that is already considered by the sentencing guidelines, we have stated:

[t]he guidelines were implemented to create greater consistency and rationality in sentencing. The guidelines accomplish the above purposes by providing a norm for comparison, *i.e.*, the standard range of punishment, for the panoply of crimes found in the crimes code and by providing a scale of progressively greater punishment as the gravity of the offense increases. . . . The provision of a "norm" also strongly implies that deviation from the norm should be correlated with facts about the crime that also deviate from the norm for the offense, or facts relating to the offender's character or criminal history that deviates from the norm and must be regarded as not within the guidelines contemplation. Given this predicate, simply indicating that an offense is a serious, heinous or grave offense misplaces the proper focus. The focus should not be upon the seriousness, heinousness or egregiousness of the offense

- 12 -

> generally speaking, but, rather, upon how the present case deviates from what might be regarded as a "typical" or "normal" case of the offense under consideration.
>
> Moreover, "[a]n aggravated range sentence [is] justified to the extent that the individual circumstances of [the defendant's] case are atypical of the crime for which [the defendant] was convicted, such that a more severe punishment is appropriate."

*Clemat*, 218 A.3d at 960 (citations omitted & emphasis added). "It is well-settled that where 'the sentencing court proffers reasons indicating that its decision to depart from the guidelines is not unreasonable, the sentence will be upheld.'" *Mulkin*, 228 A.3d at 917.

Finally, "Section 9781(c) of the Sentencing Code directs this Court to vacate a sentence and remand to the sentencing court if 'the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.'" *Commonwealth v. Smith*, 206 A.3d 551, 567 (Pa. Super. 2019), *citing* 42 Pa.C.S. § 9781(c)(3).

Appellant asserts the court did not cite sufficient aggravating factors to justify a sentence in the aggravated range. Appellant's Brief at 17. In reference to the first factor in Section 9781(d) — his characteristics and the nature of the offense — Appellant maintains the trial court did not have a PSI report and only made a "brief[ ] comment" about the nature of the offense and his "history and characteristics." *Id.* at 21-22. Instead, he insists the court relied on: (1) the Commonwealth's comments — that this was not Appellant's first domestic incident, Victim was pregnant, and Appellant continued to harass her; (2) the violent nature of Appellant generally and "prior incidents" where he was not convicted; and (3) his prior record score —

which the sentencing guidelines already considered. *Id.* at 17-20. Appellant acknowledged the court included mental health treatment and parenting classes in his sentence, but insists it did not consider his mental health or rehabilitative needs. *Id.* at 22, 26.

Regarding the second and third factors of Section 9781(d) — the opportunity for the sentencing court to observe Appellant and the findings upon which the sentence was based — Appellant contends the trial court did not acknowledge his statements made during sentencing. Appellant's Brief at 23, 27. Additionally, he again insists the trial court improperly relied on the Commonwealth's reference to previous incidents where Appellant was not convicted. *Id.* at 27. Appellant then argues the trial court's sentence did not comply with the fourth factor of Section 9781(d), because it was above the aggravated range "without sufficient justification." *Id.* at 28.

The trial court concluded the gravity of the offense and Appellant's history of violent behaviors supported a sentence above the aggravated range. Trial Ct. Op. at 2. Specifically, it opined it had "concerns" about the following:

> Appellant exhibited extremely violent behavior that placed a woman, a young child, and an unborn child at serious risk of harm. Moreover, . . . this was not Appellant's first instance of such violent behavior and . . . there have been a multitude of prior incidents involving similar violent behavior towards various women, including [V]ictim in this matter.
>
> . . . Appellant had a prior record score of 5, and we incorporated comments made by the [Commonwealth] which indicated that Appellant has continued to harass [V]ictim since the violent incident that was the subject of the charges at the instant matter. [C]onsidering the facts of this case, and . . . Appellant's extensive history of violent behavior, this [c]ourt did not abuse its

- 14 -

discretion in sentencing [him] to the statutory maximum on both counts, running the sentences consecutively[,] and imposing a sentence above the guidelines.

*Id.* at 3 (paragraph break added). We agree.

First, we note that Appellant waived his argument, that the trial court did not review a PSI report, when he did not raise it at sentencing, in a post-sentence motion, or in his Rule 1925(b) statement. **See** Pa.R.A.P. 302(a) (issues not raised before the lower court are waived and cannot be raised for the first time on appeal). Moreover, even if Appellant had preserved this claim, he would not be entitled to relief. While the trial court did not have the benefit of a PSI, it had the opportunity to consider the relevant factors before imposing a sentence. **See Commonwealth v. Luketic**, 162 A.3d 1149, 1161 (Pa. Super. 2017) ("A sentencing judge must either order a [PSI] or conduct sufficient presentence inquiry such that, at a minimum, the court is apprised of the particular circumstances of the offense, not limited to those of record, as well as the defendant's personal history and background."). At the hearing, the trial court considered Appellant's statements that he loved and financially supported his daughter, he was not aware Victim was pregnant, and that Victim maintained contact with him after the incident. **Id.** In response, however, the court expressed the following:

> I am concerned . . . about the facts of this case. It's an indication of a violent nature [Appellant has], certainly in regard to women and certainly in regard to this particular [V]ictim, your significant other. There have been prior incidents previously and the level of violence here is extremely high and it is concerning.

> And I also will incorporate into my reasons for departing above the guidelines, I will incorporate the [Commonwealth's] comments, as well as your prior record score of 5.

> *   *   *

> I'm also ordering that [Appellant] submit to a mental health evaluation, follow through on any treatment necessitated by the evaluation, submit to parenting classes as well.

N.T. 9/20/21, at 7-8.

Next, Appellant insisted the reasons on the record were not sufficient to justify his sentence, which did not comply with the factors outlined in Sections 9781(d) or 9721(b). **See** Appellant's Brief at 17, 21. We disagree. It is clear from the record that the trial court considered the nature and circumstances of the incident, Appellant's history and characteristics, the sentencing guidelines, the protection to the public, and Appellant's rehabilitative needs. **See** N.T. 9/20/21, at 7-8; Trial Ct. Op. at 2-3; **see also** 42 Pa.C.S. §§ 9721(b), 9781(d)(1)-(4). At sentencing, the court ordered mental health treatment and parenting classes, stated why it found a statutory maximum sentence exceeding the aggravated range was appropriate, and expressed specific concerns about Victim and the circumstances of the incident. **See** N.T. 9/20/21, at 7-8; Trial Ct. Op. at 2-3.

Further, to the extent Appellant argues the court considered impermissible factors, the trial court is "permitted to use factors already included in the guidelines" as a supplement to other sentencing information and may "deviate from the norm" the guidelines set out where the circumstances of the offense warrant it. **See Clemat**, 218 A.3d at 960; **see**

*also Mulkin*, 228 A.3d at 917. Factors like the violence of this incident, the presence of Appellant and Victim's young child, and the fact that Victim was pregnant at the time provided support for the imposed sentence. *See* N.T. 9/20/21, at 7-8; Trial Ct. Op. at 2-3. Appellant failed to demonstrate the court abused its discretion when imposing his sentence or that in considering the surrounding circumstances of the crime, it was unreasonable in reaching its conclusions. *See Clemat*, 218 A.3d at 959; *Smith*, 206 A.3d at 567. No relief is due.

Finally, Appellant also requests this Court "vacate the no contact provision" of his sentence. Appellant's Brief at 27. Appellant contends "the trial court [does] not have the authority to impose conditions on a state sentence." *Id.* at 28, *citing Commonwealth v. Coulverson*, 34 A.3d 135, 141 (Pa. Super. 2011) (trial court does not have authority to impose a no contact order at sentencing as a condition of **parole**).

Although Appellant preserved this issue during sentencing,[10] he failed to raise this argument in his Rule 1925(b) statement, and as such it is waived. *See* Pa.R.A.P. 1925(b)(4)(ii) (statement shall identify each error defendant wishes to raise on appeal "with sufficient detail to be raise for the" trial court), (vii) ("Issues not included in the Statement . . . are waived."). Further, had Appellant preserved this claim, he would not be due relief as the procedural

---

[10] At the plea hearing, Appellant requested permission to have contact for custody issues. N.T. 9/20/21, at 9.

poster of ***Coulverson*** and the present matter are distinguishable. ***Coulverson*** held that the trial court cannot impose a no contact order "following release on **parole**[.]" ***Coulverson***, 34 A.3d at 141 (emphasis added). Here, the trial court made no mention of imposing conditions on Appellant's parole, should it be granted. The no contact order is a condition of his incarceration. No relief is due.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/22/2022